THOMPSON, Judge,
dissenting.
On April 17, 2002, the Alabama Legislature enacted amendments to the Alabama Adoption Code, § 26-10A-1 et seq., Ala. Code 1975, and the Putative Father Registry Act, § 26-10C-1 and -2, Ala.Code 1975. See Act No. 2002-417, Ala. Acts 2002. One of the primary changes created by the enactment of Act No. 2002-417 was the amendment of the Alabama Adoption Code and the Putative Father Registry Act so that each enactment now cross-references the other. See § 26-10A-7(a)(5), Ala.Code 1975; § 26-10A-9(a)(5), Ala.Code 1975; and § 26-10C-1®, Ala. Code 1975. Thus, because the Legislature has clearly dictated that those provisions of the Alabama Adoption Code and the Putative Father Registry Act deal with the same subject matter, those provisions must be construed in pari materia. Tuders v. Kell, 739 So.2d 1069 (Ala.1999).[5]
In this case, the child was born on June 10, 2001; therefore, the provisions of the Alabama Adoption Code, as amended by Act No. 2002-417, apply to govern this action. See Act No. 2002-417, § 3, Ala. Acts 2002 (providing that the act has retroactive effect to January 1, 1997). After the petitioners filed their petition to adopt the child, the trial court ordered that notice by publication be provided, pursuant to § 26-10A-17(a)(10), Ala.Code 1975, to any putative father of the child. Upon receiving notice by publication of the adoption proceedings, J.N.F. filed a document on June 4, 2002, entitled “objection to [the] adoption.” In that filing, J.N.F. objected to the adoption, contended that he was the *587 child’s natural father and that he was the fit and proper person to have custody of the child, and requested a DNA test to establish his paternity of the child.
J.N.F. does not contend that he is the child’s presumed father under § 26-10A-7(a)(3), Ala.Code 1975, and the record does not support an inference that he is the child’s presumed father. There is no evidence that the mother and J.N.F. ever married or attempted to marry, or that J.N.F. received the child into his home and held the child out as his own. See § 26-10A-7(a)(3), Ala.Code 1975. Also, the paternity of the child has never been established. Therefore, I conclude that J.N.F. is a putative father of the child. See In re Adoption of J.C.P., [Ms. 2010594, Aug. 16, 2002] — So.2d - (Ala.Civ.App.2002) (concluding, under facts similar to those in this case, that the appellant was not the presumed father but was a putative father of the child at issue).
Act No. 2002-417, among other things, amended § 26-10A-7, Ala.Code 1975, which sets forth the persons whose relinquishment or consent to an adoption is required. Section 26-10A-7, as amended, now provides in pertinent part that consent to an adoption shall be required from
“[t]he putative father if made known by the mother or is otherwise made known to the court provided he complies ivith Section 26-10C-1 [of the Putative Father Registry Act] and he responds within 30 days to the notice he receives under Section 26-10A-17(a)(10).”
§ 26-10A-7(a)(5), Ala.Code 1975 (emphasis added).
Thus, pursuant to the amendments to the Alabama Adoption Code effected by Act No. 2002-417, a putative father’s consent for an adoption is required only where the putative father responds within 30 days to notice of the adoption and “complies with Section 26-10C-1.” § 26-10A-7(a)(5), Ala.Code 1975. Section 26-10C-1, Ala.Code 1975, sets forth the method by which a putative father must register his intent to claim paternity of a child with the Department of Human Resources.,' The record in the instant case does not indicate that J.N.F-. complied with § 26-10C-1 by registering under the putative-father registry; J.N.F. made no assertion before the trial court or in his brief to this court that he did in fact comply with § 26-10C-1. Therefore, under the clear terms of § 26-10A-7, as amended, J.N.F.’s consent to the adoption was not required.
Further, I conclude that, given the changes in the Alabama Adoption Code and the Putative Father Registry Act created by the enactment of Act. No.2002-417, J.N.F. was not a person entitled to file a contest to the adoption proceedings. The Putative Father Registry Act, as amended by Act No. 2002-417, now provides in pertinent part:
“(i) Any person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity pursuant to subsection (a) prior to or within 30 days of the birth of a child born out of wedlock, shall be deemed to have given an irrevocable implied consent in any adoption proceeding.

“This subsection shall be the exclusive procedure available for any person who claims to be the natural father of a child bom out of wedlock on or after January 1, 1997, to entitle that person to notice of and the opportunity to contest any adoption proceeding filed and pending on or after January 1, 1997.”

§ 26 — 10C—l(i), Ala.Code 1975 (emphasis added). Thus, as I interpret the newly amended Putative Father Registry Act, J.N.F.’s- failure to comply with that section precludes him from filing a valid contest to the adoption. Section 26 — 10C—1 (i) now *588 provides the exclusive method by which a putative father is “entitle[d] ... to notice of and the opportunity to contest” any pending adoption proceeding. (Emphasis added.) Therefore, because J.N.F. did not comply with § 26-10C-1, I believe that he is precluded from contesting the adoption of the child.
In Ex parte F.P., 857 So.2d 125 (Ala.2003), the supreme court recognized the implications of Act No. 2002-417 and its retroactive effect on the constitutional rights of a putative father. In Ex parte F.P., the putative father filed a “petition to determine father and child relationship” on July 1, 1999, in which he alleged that he had registered with the putative-father registry; the father registered, pursuant to the Putative Father Registry Act, more than two years prior to the enactment of Act No. 2002-417. 857 So.2d at 137. The supreme court held that the putative father’s constitutional rights had vested before the passage of Act No. 2002-417, and, therefore, the father had a defense to the adoption action filed by the adoptive parents. Ex parte F.P., 857 So.2d at 138.
Unlike the putative father in Ex parte F.P., the record in the instant case does not indicate that J.N.F. registered as a putative father pursuant to the Putative Father Registry Act. Moreover, J.N.F. first filed his notice of appearance on June 4, 2002, 48 days after Act No. 2002-417 was enacted by the Legislature. It is clear that, in applying the supreme court’s holding in Ex parte F.P. to the facts before us in the instant case, J.N.F.’s rights did not vest and the retroactive application of Act No. 2002-417 was proper.
In its judgment, the trial court determined that all required consents to the adoption had been provided, and that no contest to the adoption proceeding had been filed. Although J.N.F. filed a document in which he sought to object to the adoption of the child, because of his failure to comply with § 26-10C-1, Ala.Code 1975, as amended, J.N.F. was not a person entitled to contest the adoption. See § 26-10C-l(i), Ala.Code 1975. Therefore, the trial court was correct in determining that no contest to the adoption had been filed, because no person entitled to file a contest to the adoption proceedings did so. I believe that in reaching the findings contained in its judgment, the trial court properly interpreted the Alabama Adoption Code and the Putative Father Registry Act, as amended by Act No. 2002-417. I would affirm the trial court’s judgment, which approves the petitioner’s petition to adopt the child. Therefore, I must respectfully dissent.

. In Ex parte S.C.W., 826 So.2d 844 (Ala.2001), our supreme court, relying on a dissent authored by Judge Crawley, reversed this court’s affirmance of a judgment of adoption. This court had based its holding on the conclusion that the putative father's failure to comply with the Putative Father Registry Act rendered his consent to the adoption unnecessary. S.C.W. v. C.B., 826 So.2d 825 (Ala.Civ.App.2001), rev’d, 826 So.2d 844 (Ala.2001). The Supreme Court of Alabama found that the Alabama Adoption Code and the Putative Father Registry Act, as they existed at the time of that court's decision, were separate enactments that did not cross-reference each other, and, therefore, that the two enactments were in conflict. Ex parte S.C.W., 826 So.2d at 850. The supreme court resolved the conflict by concluding that the provisions of the more inclusive Alabama Adoption Code took precedence over the Putative Father Registry Act; therefore, the court held that the putative father’s failure to comply with the Putative Father Registiy Act, because he had taken other action to object to the adoption, did not prevent him from contesting the adoption. Ex parte S.C.W., supra.
On April 17, 2002, after the Supreme Court released its decision in Ex parte S.C.W., supra, the Legislature adopted Act No. 2002-417, Ala. Acts 2002. That act amended the Alabama Adoption Code and the Putative Father Registry Act so that each enactment now cross-references the other; pursuant to the new amendments, the two enactments are to be construed together. Thus, Ex parte S.C.W. has been superseded by statute.